UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JERMAINE DAWKINS,

                                   Plaintiff,

        vs.                                         9:04-CV-943
                                                   (LEK/GJD)
DR. WHALEN, et al.,

                                   Defendants.
_____

JERMAINE DAWKINS, Plaintiff pro se
JAMES J. SEAMAN, Asst. Attorney General for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

**REPORT-RECOMMENDATION**

       This matter has been referred to me for Report and Recommendation by the

Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C.

§ 636(b) and Local Rules N.D.N.Y. 72.3(c).

       In this amended civil rights complaint, plaintiff alleges that defendants denied

him constitutionally adequate medical care. (Dkt. No. 33).  Plaintiff requests

declaratory and substantial monetary relief.

       Presently before the court is defendants motion to dismiss pursuant to FED. R.

CIV. P. 12(b)(6). (Dkt. No. 34).

**DISCUSSION**

**1.**    <u>**Motion to Dismiss**</u>

       A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court must accept the material facts alleged in the complaint as true. *Id*. (citing *Cooper v. Pate,* 378 U.S. 546 (1964)(per curiam)).  In determining whether a complaint states a cause of action, great liberality is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted).

When considering a motion to dismiss for failure to state a claim, the court may consider the complaint, together with any documents attached as exhibits or incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1998).  The court may also consider public documents and those of which judicial notice may be taken. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991).  When matters outside the pleadings are presented, the court may either exclude those matters or treat the motion as one for summary judgment under FED. R. CIV. P. 56. FED. R. CIV. P. 12(b).

However, when a plaintiff chooses not to attach or incorporate by reference a document upon which he solely relies and that is integral to the complaint, the court may take the document into consideration without converting the motion. *Internat'l Audiotext Network v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).  In order to be "integral" to the complaint, the complaint must rely heavily on the document's terms and effect." *Young v. Lee*, 432 F.3d 142, 146-47 (2d Cir. 2005)(citations omitted).  If the court is to consider this type of document, it must be clear that no dispute exists regarding the authenticity or accuracy of the document and

that no material dispute exists regarding the relevance of the document. *Falkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  One of the most important considerations is that when considering the sufficiency of a pro se complaint, the court must afford the plaintiff great liberality and apply less stringent standards than when a party is represented by counsel. *Branham v. Meachum*, 77 F.3d 626, 628-29 (2d Cir. 1996).

**2.    Facts**

In his amended complaint, plaintiff alleges that on June 13, 2003, he smashed his left ring-finger in the dormitory "living area door of facility housing unit N-1" at Bare Hill Correctional Facility. Amended Complaint (AC) ¶ 6.  Plaintiff states that his finger was badly swollen and bleeding. AC ¶ 7.  Plaintiff states that Corrections Officer Nelson sent plaintiff to emergency sick call. AC ¶ 8.  Plaintiff states that when he arrived at the medical department he was "seen" by defendant Grant, a registered nurse. AC ¶ 9.

Plaintiff states that defendant Grant asked plaintiff what happened and completed an incident report. AC ¶ 10.  Plaintiff claims that defendant Grant told plaintiff that his finger was not broken and that there was "nothing wrong with the injured finger." AC ¶ 11.  Defendant Grant then gave plaintiff a band-aid, told him to sign the incident report, and sent him back to his housing unit. AC ¶ 12.  Plaintiff claims that he was in extreme pain and had no movement in his finger. AC ¶¶ 13-14.

Plaintiff states that his finger was still badly swollen when he returned to the facility medical department on June 26, 2003 to seek medical treatment for the finger. AC ¶¶ 15-16.  Plaintiff states that he was examined by a different nurse, (unnamed and

3

not a defendant in this action), who looked for, but could not find the incident report that was completed by defendant Grant. AC ¶¶ 17-18.  Plaintiff states that this nurse noted in plaintiff's file that the finger was still swollen, plaintiff was unable to straighten it, he needed x-rays taken, and needed to be examined by a physician. AC ¶ 20.

Plaintiff states that he returned to the medical department on July 15, 2003, and again saw defendant Grant, who told plaintiff that he was already scheduled to see defendant Dr. Whalen, and that Nurse Grant could not treat plaintiff's injury. AC ¶ 23. Plaintiff claims that although he asked defendant Grant about the "missing" incident report, she declined to comment. AC ¶ 24.  Plaintiff states that on August 8, 2003, he still had not been examined by a physician, so plaintiff filed a grievance against Dr. Whalen and the medical department. AC ¶ 27.  Plaintiff states that Mr. Stanley, the Inmate Grievance Program supervisor completed an investigative report on August 22, 2003. AC ¶ 30.

In response to the investigation by Mr. Stanley, Acting Nurse Administrator, defendant Downer stated that plaintiff was scheduled to see Dr. Whalen, and that plaintiff could address his treatment at that time. AC ¶ 31.  Plaintiff claims that defendant Downer knew that it had been over two months since the date of the injury, but failed to give plaintiff a priority, knowing the risk that the condition would worsen. AC ¶ 33.  Plaintiff also alleges that the incident report that was provided by the medical department was not the same incident report that was completed at the time of plaintiff's injury. AC ¶ 34.

4

Plaintiff states that he was finally taken to Upstate Correctional Facility on September 5, 2003 to have an x-ray taken of the injured finger, but that the x-ray film was "technically unacceptable" due to over exposure and "severe" processing error. AC ¶ 35, 36.  However, the x-ray apparently did indicate that there was a broken bone in plaintiff's finger. AC ¶ 36.  Plaintiff claims that he returned to the medical department at Bare Hill several times after the x-ray had been taken, but nothing was ever done to treat his finger. AC ¶ 38.

Plaintiff states that on September 16, 2003, defendant Superintendent Donelli, denied the grievance appeal because plaintiff had "already seen the physician and received an x-ray," even though plaintiff had *not* seen a physician at that time. AC ¶¶ 39-40.  Plaintiff appealed the denial of his grievance to the Central Office Review Committee in Albany. AC ¶ 41.  Plaintiff states that he finally saw Dr. Whalen on September 30, 2003, who told plaintiff that the finger was indeed broken, but that there was nothing that Dr. Whalen could do for him. AC ¶¶ 43-44.  Although plaintiff asked defendant Whalen whether plaintiff could be referred to an orthopedic specialist, Dr. Whalen stated that it would not be necessary. AC ¶ 45.  Plaintiff states that he did not receive any further treatment for his finger at Bare Hill. AC ¶ 46.

Plaintiff claims that on January 26, 2005, while he was incarcerated at Arthur Kill Correctional Facility, he was sent to Staten Island University Hospital by Dr. Mitchell, the Clinical Director at Arthur Kill, to be examined by an orthopedic specialist. AC ¶ 47.  The specialist allegedly told plaintiff that it was "too late" for any further medical treatment for plaintiff's finger. AC ¶ 47.  Plaintiff claims that as a

5

result of the defendants' deliberate indifference, he has suffered permanent damage to his finger, and that this injury will prevent plaintiff from practicing his profession as a musician. AC ¶¶ 51-52.

3.    **Eleventh Amendment**

Plaintiff seeks damages against the defendants in their "official" as well as individual capacities. It is now well-settled that the state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995)(citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales*, 984 F.2d 84, 87 (2d Cir. 1991). Thus, to the extent that the complaint seeks damages against defendants in their "official capacities", the complaint may be dismissed. The complaint may proceed as against the defendants in their "individual capacities."

Plaintiff also seeks "declaratory" relief. AC at p.7. Plaintiff does not ask for any prospective injunctive relief. It has been held that declaratory relief against a State is barred by the Eleventh Amendment where it is not accompanied by prospective injunctive relief. *See Kapps v. Wing*, 404 F.3d 105, 122 n.25 (2d Cir. 2005)(citing *inter alia Green v. Mansour*, 474 U.S. 64, 71-72 (1985)). Since no prospective injunctive relief is requested in this action, plaintiff's claims for declaratory relief against the defendants in their "official capacities" may be

6

dismissed.

**4.** <u>**Medical Care**</u>

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003). There are two elements to the deliberate indifference standard. *Smith*, 316 F.3d at 183-84. The first element is *objective* and measures the severity of the deprivation, while the second element is *subjective* and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

In order to meet the first element of the standard, plaintiff must show that he has a sufficiently serious illness or injury. *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition has been considered "sufficiently serious" when there is a "condition of urgency," one that may result in death, degeneration, or extreme pain. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The seriousness of a plaintiff's medical need may also be determined by reference to the effect of denying the particular treatment. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 310 (S.D.N.Y. 2001)(citation omitted). Thus, if unnecessary and wanton infliction of pain results from the denial of treatment, or if the denial of treatment causes the inmate to suffer a lifelong handicap or permanent loss, the condition may be considered "sufficiently serious." *Id.* (citing *Harrison v. Barkley*,

219 F.3d 132, 136 (2d Cir. 2000)).

In order to meet the second element of the standard, plaintiff must demonstrate more than an "inadvertent" or negligent failure to provide adequate medical care. *Id.* (citing *Estelle*, 429 U.S. at 105-106). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). In order to be "deliberately indifferent" the defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists and he must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Disagreement with prescribed treatment does ***not*** rise to the level of a constitutional claim. *Sonds*, 151 F. Supp. 2d at 311. Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id*. (citations omitted). An inmate does ***not*** have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice,

8

malpractice does **not** become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under section 1983).  Thus, any claims of malpractice, or disagreement with treatment are not actionable under section 1983.  The court would point out that a **delay** in treatment, contrasted with a **denial** of treatment does not necessarily invoke the Eighth Amendment. *Magee v. Childs*, 9:04-CV-1089, 2006 U.S. Dist. LEXIS 14571, *12 (N.D.N.Y. Feb. 27, 2006)(Treece, M.J.).[1]

Rather than arguing that plaintiff has not stated a claim under the Eighth Amendment, defendants' central argument in this case is that they are entitled to qualified immunity.  They do not argue that a broken finger does not as a matter of law rise to the level of a "serious medical need," rather their qualified immunity argument is that in 2003, it was not "clearly established" that a broken finger rose to the level of a "serious medical need" under the Eighth Amendment.

Qualified immunity protects defendants from liability for acts which do not violate a clearly established constitutional right of which a reasonable defendant would have known. *Scotto v. Almenas*, 143 F.2d 105, 110 (2d Cir. 1998)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 810 (1982)).  The inquiry must be directed at the "objective reasonableness" of the defendants' acts. *Farid v. Goord*, 200 F. Supp. 2d 220, 244 (W.D.N.Y.  2002).  An inmate's right to constitutionally adequate medical

---

[1] The court notes that in *Magee*, Magistrate Judge Treece issued a Report-Recommendation, recommending that plaintiff's complaint be dismissed on the merits. (Dkt. No. 28)(04-CV-1089). Although the case was ultimately dismissed due to plaintiff's failure to prosecute, including the failure to inform the court of his change of address, District Judge Gary L. Sharpe noted in his decision that he would have adopted Magistrate Judge Treece's recommendation. (Dkt. No. 32).

treatment is and was a clearly established right at the time that the defendants took their actions. *See Verley v. Goord*, 02 Civ. 1182, 2004 U.S. Dist. LEXIS 857, *56 (S.D.N.Y. Jan. 22, 2004)(citations omitted).  However, even when the constitutional right is clearly established, a defendant will still be entitled to qualified immunity if it was objectively reasonable to believe that his or her actions were lawful ***at the time of the challenged acts***. *Id.*

A qualified immunity defense is generally only considered at the summary judgment stage because it usually depends on the facts of the case, making dismissal at the pleading stage inappropriate. *Id.* at *57 (citing *inter alia King v. Simpson*, 189 F.3d 284, 289 (2d Cir. 1999)).  Additionally, although defendants cite *Horne v. Coughlin*, 178 F.3d 603 (2d Cir. 1999) for the proposition that the court may go directly to the qualified immunity issue prior to determining whether there has been a constitutional violation at all, the Supreme Court has since determined that the requisites of a qualified immunity defense must be decided in "proper sequence." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  That proper sequence involves first determining whether the defendant's conduct violated a constitutional right, then the court may proceed to determine whether that right was clearly established. *Id.* at 201.

There are some situations, not relevant to this case, where the *Saucier* analysis might not be applicable.[2] *See Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 56-57 (2d

---

[2] The court in *Horne* was concerned with cases in which the assessment of whether a constitutional right was violated would be a "particularly difficult exercise" and thus, moving directly to the second stage of the qualified immunity inquiry was warranted. *Horne*, 191 F.3d at 249.  Additionally, the court in *Horne* noted that where qualified immunity existed, the assertion that a constitutional right existed would be "pure dictum" and would play no role in supporting

Cir. 2003)(discussing situations in which the court may make the "well-established" determination first).  The Second Circuit made it clear that the majority of cases must be decided first considering whether there has been a constitutional violation, and only then proceeding to the next step of determining whether that right was "well-established" at the time of the defendants' conduct. *Id.* at 57.

This court instead will focus upon the facts as stated in plaintiff's complaint.[3] The court would first note that it is unclear what claim plaintiff has against defendant Donelli, the Superintendent of Bare Hill.  The ***only*** allegation against defendant Donelli is that he denied the plaintiff's grievance appeal on September 16, 2003 because plaintiff had "already seen the physician" and received an x-ray. AC ¶ 39. Plaintiff himself admits that x-rays were taken on September 5, 2003 (AC ¶ 35). Plaintiff also states that his grievance complaint requested "to be seen by a physician and have an x-ray taken." AC ¶ 28.

Thus, defendant Donelli was correct in stating that at least one of plaintiff's requests had been granted on September 5, 2003.  Although plaintiff states that he had not yet seen "a physician" on the date that defendant Donelli denied plaintiff's grievance, thus, implying that defendant Donelli was incorrect in that assertion, there is no indication that Donelli's mistake was the result of deliberate indifference to

---

the action taken by the court. *Id.* at 247.  Even assuming the continued viability of *Horne*, neither of these concerns has any relevance to this case.

[3] The court notes that even though defendants did not argue for dismissal based on the court's rationale, the Prison Litigation Reform Act provides that the court shall dismiss the action at any time if, among other things, the action fails to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

plaintiff's serious medical need, even assuming that the broken finger was a serious need.  Plaintiff states that he was taken to Upstate Correctional Facility for his x-ray. AC ¶ 35.  It may have been defendant Donelli's assumption that this fulfilled plaintiff's grievance request.  Even assuming the truth of the facts asserted in plaintiff's complaint, he fails to state a constitutional claim against defendant Donelli. Thus, the complaint may be dismissed as against defendant Donelli.

Plaintiff alleges that defendant Nurse Grant saw plaintiff twice.  On June 13, 2003, the day of plaintiff's injury, defendant Grant told plaintiff that his finger was not broken, gave him a band-aid and "told plaintiff to leave." AC ¶¶ 11, 12.  Plaintiff apparently returned to the medical department on June 26, 2003 and was seen by a different nurse, who allegedly wrote in plaintiff's file that he needed to see a physician and have the finger x-rayed. AC ¶¶ 15-20.  Plaintiff did not name this nurse as a defendant in his action.  The plaintiff states that he saw defendant Grant again on July 15, 2003, at which time she told him that he was scheduled to see defendant Whalen, and that defendant Grant could not treat the injury. AC ¶¶ 21-23.  Plaintiff also states that defendant Grant would not comment when asked about the missing report that she had written on June 13, 2003. AC ¶ 24.

Even assuming the truth of all the allegations in plaintiff's complaint against defendant Grant, there are no allegations that rise to the level of deliberate indifference to plaintiff's serious medical needs.  The first time that defendant Grant saw plaintiff, the court assumes that she was incorrect in stating that plaintiff's finger was not broken, but at worst, she may have been negligent in stating that there was

12

"nothing wrong".  There are no facts that would indicate that she was deliberately indifferent to plaintiff's broken finger.  The second time that she saw plaintiff, she told him that he was scheduled to see the doctor, and that she could not treat the injury.  If in fact, plaintiff's finger was broken, defendant Grant was correct in stating that she, as a nurse, could not treat the injury.  There is no deliberate indifference in telling plaintiff that he was scheduled to see the doctor.  Whether he ultimately saw the doctor or how long it took him to see the doctor is not relevant to defendant Grant's statements on July 15, 2003.  Plaintiff only alleges that defendant Grant told plaintiff he was scheduled to see the doctor.  There is no allegation that defendant Grant was responsible for any subsequent delay.  Therefore, the complaint may be dismissed as against defendant Grant.

Although the court cannot find that any delay in medical care prior to September 30, 2003, can be attributed to Dr. Whalen based on the face of the complaint, plaintiff alleges that when he finally saw Dr. Whalen, he stated that the finger was broken and that there was nothing that the doctor could do for plaintiff.  Without additional facts, this court cannot say that plaintiff's condition could  not have been a serious medical need and that Dr. Whalen was not deliberately indifferent to that need.

Plaintiff also alleges that he asked to see a specialist, to which Dr. Whalen responded that it would not be necessary.  AC ¶ 45.  While it is true that a plaintiff does not have the constitutional right to demand any particular care, nor does he have the constitutional right to demand a particular physician, without more facts, this court

13

cannot find that there is *no set of facts* that plaintiff could prove that would entitle him to relief.

Plaintiff alleges that on January 26, 2005, while he was incarcerated at Arthur Kill Correctional Facility he was examined by an orthopedic specialist who told plaintiff that it was too late for any further medical treatment to his finger. AC ¶ 47. Defendants submit an exhibit to their motion to dismiss, arguing that the court may consider this exhibit without converting the motion to one for summary judgment because the plaintiff "relied" upon this document in drafting the complaint. Defendants' Ex. A. The document refers to plaintiff's examination by the orthopedic specialist on January 26, 2005. This court does *not* agree that this document was either relied upon by plaintiff or that the document was "integral" to the complaint.

Defendants submit the exhibit to show that plaintiff was not referred to the orthopedic specialist in January of 2005 because of plaintiff's finger. The complaint, however, does not specifically allege that the referral was due to plaintiff's finger. The complaint merely states that the doctor told plaintiff that there was no further treatment that could be administered to his finger. AC ¶ 47. The doctor could have made this statement even though plaintiff was being examined for a different condition. Thus, plaintiff did not rely upon this document, the document is not "integral" to the complaint, and the court will not consider it in making its determination of this motion.

Plaintiff does allege that his finger is permanently damaged. AC ¶ 51. Although the court does find that the allegations in this case are weak, and that it does not

14

appear that the medical condition suffered by plaintiff was serious, the court cannot say, based on the face of the complaint, that there are no facts the plaintiff could prove that would entitled him to relief.  A motion for summary judgment would have been better suited to support a request for dismissal.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 34) be **GRANTED ONLY AS TO PLAINTIFF'S CLAIMS AGAINST ALL DEFENDANTS IN THEIR "OFFICIAL CAPACITY"**, and it is further

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 34) be **DENIED IN ALL OTHER RESPECTS**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim pursuant to **28 U.S.C. § 1915(a)(2)(B)(ii)** as against defendants **GRANT and DONELLI**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 27, 2007

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge