UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JERMAINE DAWKINS,

                                        Plaintiff,


                vs.

                                                        9:04-CV-943
DR. WHALEN and T. DOWNER, Nurse Administrator,          (J. Kahn)
                                        Defendants.
_____

JERMAINE DAWKINS, Plaintiff *Pro Se*
JAMES SEAMAN, Assistant Attorney General for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This matter has been referred to me for Report and Recommendation by the

Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

        In this amended civil rights complaint, plaintiff alleges that defendants denied

him constitutionally adequate medical care.  (Amended Complaint ("AC") at Dkt.

No. 33).  Plaintiff requests declaratory and substantial monetary relief.

        On February 27, 2007, this court recommended that defendants' motion to

dismiss be granted  as to plaintiff's claims against all defendants in their "official

capacity," and granted as to Defendants Registered Nurse Grant and Superintendent

Donelli.  (Dkt. No. 41).  On March 29, 2007, Senior District Judge Lawrence E.

Kahn approved and adopted this court's recommendations in their entirety.  (Dkt.

No. 44).  The remaining defendants are Dr. Whalen and Nurse Administrator ("NA")

T. Downer.

Presently before the court is defendants' motion for summary judgment

pursuant to FED. R. CIV. P. 56.  (Dkt. No. 61).  Plaintiff opposes defendants' motion.

For the following reasons, the court will recommend that the motion for summary

judgment as to the remaining defendants be granted.

## DISCUSSION

### 1.   Summary Judgment

Summary judgment may be granted when the moving party carries its burden

of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56;

*Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).

"Ambiguities or inferences to be drawn from the facts must be viewed in the light

most favorable to the party opposing the summary judgment motion." *Id*.  However,

when the moving party has met its burden, the nonmoving party must do more than

"simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86

(1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  At

that point, the nonmoving party must move forward with specific facts showing that

there is a genuine issue for trial.  *Id*.  A dispute about a genuine issue of material fact

exists if the evidence is such that "a reasonable [factfinder] could return a verdict for

the nonmoving party." *Anderson*, 477 U.S. at 248.  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## 2.   **Facts**

Plaintiff is currently incarcerated at the McKean Federal Correctional Institution in Bradford, Pennsylvania.  The circumstances giving rise to this claim occurred at Bare Hill Correctional Facility in Malone, New York beginning in June 2003 through the time of plaintiff's transfer to Arthur Kill Correctional Facility in February 2004.  (Ambulatory Health Record[1] ("AHR") at Feb. 13, 2004).  Plaintiff has been continuously incarcerated in five different state and federal prisons since his incarceration at Bare Hill.  (Dkt. Nos. 1, 6, 17, 31, and 64; *see also* Plaintiff's Deposition[2] ("Depo.") at 28-30).

On June 13, 2004, plaintiff attempted to open a door in the N1 dorm at Bare Hill Correctional Facility.  (Depo. at 33-34).  According to plaintiff, he gripped the door knob (Depo. at 33) with his right hand (Depo. at 37), and used his left hand to

---

[1]The Ambulatory Health Record ("AHR") is located in Exhibit 6 of Assistant Attorney General Seaman's Affidavit in support of the summary judgment motion, located at Docket Number 61.

[2]Plaintiff's Deposition ("Depo.") is located at Exhibit A of Assistant Attorney General Seaman's Affidavit in support of the summary judgment motion, located at Docket Number 61. Each page of the exhibit has four pages of deposition testimony on it.  For instance, page 8 of the exhibit includes deposition testimony pages 26, 27, 28, and 29.  The court will use the numbering on the deposition testimony pages instead of the pages of the exhibit.

grip the edge of the door "to assist" in opening the door (Depo. at 39).  Plaintiff testified that the door was difficult to open: ". . . the weight of the door, it was very heavy going into these living quarters.  I don't know if it's paint, but sometimes – actually, all the time the door sticks so you really have to use some sort of force. . . When you grip that knob or that handle and you pull it, the majority of the time it gets stuck." (Depo. at 38).  Plaintiff testified that when he opened the door, he heard a "pop," and then the door closed on plaintiff's left hand.  (Depo. at 39-42).  Plaintiff stated that the door "nipped the top of my middle finger," but caught his fourth digit between the door and the door jamb.  (Depo. at 41-42).  Next, "[s]omeone was standing by me and actually seen it and just went and grabbed the door and assisted me in opening the door."  (Depo. at 43).

Plaintiff testified that he "went right to the officer's station . . . [and] was sent to medical."  (Depo. at 45).  Plaintiff testified

> I went up and I saw Nurse Grant.[3]  She filled out an incident report.  She looked at my finger.  Even though, like I said, it was the size of a ping pong ball and it was bleeding.  She gave me a bandaid.  She never even cleaned it up.  She just gave me a bandaid.  Had me sign an incident report saying that my finger was smashed inside the door on N1 dorm at the approximate time and she sent me on my way.  I requested to be seen by a physician and she kept stating there was nothing wrong with your finger.

(Depo. at 45).

---

[3]Nurse Grant was a defendant in this action.  Senior District Judge Kahn dismissed the claims against her for failure to state a claim.  (Dkt. No. 44).

Plaintiff submitted a page from Officer Nelson's Log Book dated June 13, 2003.  An entry at 11:50 a.m. states that plaintiff "stated to me that he closed his finger in the dorm door.  he thinks it may be broken.  I called the clinic and I talked to Nurse Grant, she said to send him up."  (Dkt. No. 63, Exhibit B at 1).  Plaintiff also submitted two pages of the Medical Station's Log Book.  The log for June 13, 2003 begins in the middle of the page.  At 11:30 a.m., the nurse wrote "Count clear."  (Dkt. No. 63, Exhibit B at 2).  The entry immediately following the 11:30 a.m. entry is labeled "12:15 a.m."  *Id*.  This appears to be an error and should have been written "12:15 *p.m.*"  The 12:15 a.m. entry states "ESC - N1 - Dawkins, 98A4957 - nurse notified."  *Id*.  The next entry is labeled "12:30 p.m.," and states "meds called."  *Id*.

At approximately 5:40 p.m. the same day, June 13, 2003, plaintiff was involved in an incident that resulted in an Inmate Misbehavior Report.  (Dkt. No. 61, Seaman Aff., Exhibit 2).  Officer Whitemarsh charged plaintiff with three violations: Threats, Creating a Disturbance, and being "Out of Place."  *Id*.

The AHR does not appear to contain any record of a complaint by plaintiff about his finger on June 13, 2003.  The AHR does contain an entry on June 13, 2003 that  states "[i]nmate viewed in shorts.  0 injuries noted.  Denies any injuries at this time.  inmate injury report filled out at this time.  Inmate able to answer all questions . . . no problems."  (AHR at June 13, 2003).  The June 13, 2003 AHR entry states that the time of the entry was "1756," or 5:56 p.m.  An Inmate Injury Report dated June

13, 2003 notes the following in the "Nature of Injury" section: "viewed in shorts 0 injuries noted.  Denies any injuries at this time."  (Dkt. No. 61, Seaman Affidavit, Exhibit B at 13).  According to the Inmate Injury Report, no treatment was provided at that time.  *Id*.  The Inmate Statement section of the report shows a quote from plaintiff: "Just a stupid dispute."  *Id*.  At his deposition, plaintiff testified that the dispute was over how the inmates decided what to watch on the common television. (Depo. at 61).

Plaintiff claims that he was in extreme pain and had no movement in his finger.  (AC ¶¶ 13-14).  Plaintiff states that his finger was still badly swollen when he returned to the facility medical department on June 26, 2003 to seek medical treatment for his finger.  (AC ¶¶ 15-16).  Plaintiff states that he was examined by a different nurse (unnamed and not a defendant in this action), who looked for, but could not find the incident report that was completed by Nurse Grant.  (AC ¶¶ 17-18).  On June 26, 2003, the nurse stated

> inmate states "I slammed my Lt Ring finger in door in dorm on 6/13/03 - I signed an accident report for injs." unable to find accident report in chart.  splint applied.  -Ring finger - swollen ecclymatic, at end of finger above nail bed. unable to straighten fully - MD review - x-ray

(AHR at June 26, 2003(2)).

Just before the June 26, 2003 AHR entry about plaintiff's ring finger, the AHR indicates an earlier visit on the same day.  (AHR at June 26, 2003(1)).  The nurse for the earlier entry indicated that an "MD review" would be scheduled.  *Id*.  The nurse

6

wrote that plaintiff was "going to be IPA in transitional services & need[s] to have medical hold lifted before [he] starts program." *Id*.

The AHR shows an entry for June 27, 2003. (AHR at June 27, 2003). It is unclear whether this entry involved an examination of plaintiff or not. The entry states "program called to see if i/m can come off medical idle. I/m may come off lifting >20lbs [sic] but permission granted to be a tutor. schedule for MD call out re: L ring finger". *Id*.

In her Declaration in support of the motion for summary judgment, Defendant NA Downer states that Dr. Weissman reviewed plaintiff's chart "[o]n or about July 8 or 9, 2003 . . . [Dr. Weissman] ordered [plaintiff] to be seen for an examination of his finger." (Dkt. No. 61, Downer Decl. at ¶ 20). NA Downer states that "at some point in time," she confirmed that plaintiff was scheduled for an appointment with a physician. *Id*. at 21. NA Downer states that the AHR shows that Dr. Weissman reviewed plaintiff's AHR on June 27, 2003 and July 8 or 9, 2003. (AHR at June 26 (1) and June 27, 2003). Dr. Weissman's dated notations were made on the bottom line of the first AHR entry on June 26, 2003 and the AHR entry for June 27, 2003. *Id*. In her Declaration, NA Downer explained that because Dr. Weissman "did not designate a particular scheduling category [either time that he reviewed plaintiff's chart], the 'assigned' category applied, meaning that the appointment would be scheduled more than one month from the date of the order." (Dkt. No. 61, Downer

Decl. at 17 & 20).

On July 15, 2003, the AHR shows that plaintiff complained about pain in his left knee and a left finger.  (AHR at July 15, 2003).  The nurse wrote a note stating "scheduled to see MD."  *Id.*  The AHR shows that plaintiff next complained to the medical department on September 4, 2003.  (AHR at Sept. 4, 2003).  Dr. Whalen examined plaintiff on September 4, 2003, and found that there some was soft tissue swelling around the last joint in the finger that prevented plaintiff from fully entending his finger.  *Id*. *See also* Dkt. No. 61, Whalen Decl. at ¶ 9.  The AHR shows that x-rays on plaintiff's knees and left ring finger were performed on September 5, 2003.  (AHR at Sept. 15, 2003).  An x-ray report dated September 5, 2003 stated "film is technically unacceptable due to marked over-exposure and severe processing error.  Examination demonstrates moderately displaced dorsal, intra-articular fracture off the base of the distal phalanx.  (Dkt. No. 61, Seaman Aff., Exhibit 6 at 12).  The AHR indicated that the x-rays had been sent to Alice Hyde Hospital to be read by a radiologist as of September 15, 2003.  *Id*.; Dkt. No. 61, Downer Decl. at ¶27.

The AHR shows that Dr. Whalen received and reviewed plaintiff's x-ray report on September 29, 2003.  (AHR at Sept. 29, 2003).  The AHR shows that Dr. Whalen noted a "moderately displaced dorsal, intra-articular fracture of the base of the distal phalanx."  *Id*.  In his Declaration, Dr. Whalen explained that the distal phalanx is the "last bone in the finger from the tip to the DIP joint."  (Dkt. No. 61,

Whalen Decl. at ¶ 12).  Dr. Whalen visited plaintiff on September 30, 2003.  (AHR at Sept. 29 and Sept. 30, 2003).  The AHR shows that upon examination, Dr. Whalen found that plaintiff was able to flex and extend his finger without difficulty, and noted some tenderness.  (AHR at Sept. 30, 2003).  In his Declaration, Dr. Whalen stated "[i]t was my opinion at the time, and remains my opinion today, that the joint exhibited relatively good range of motion and that as the residual swelling subsided additional function could be expected to return to the joint.  (Dkt. No. 61, Whalen Decl. at ¶ 13).  The AHR does not reflect any complaints by plaintiff or treatment by the medical department at Bare Hill Correctional Facility for plaintiff's left ring finger after September 30, 2003.  Plaintiff was transferred to Arthur Kill Correctional Facility in February 2004.  (AHR at Feb. 10 and Feb. 13, 2004).

The AHR shows that plaintiff communicated with the medical department regarding his left ring finger in June, July and August 2004 at Arthur Kill Correctional Facility.  (AHR at June 29, July 12, July 26, July 28, and August 3, 2004).  On June 29, 2004, plaintiff complained about "swelling and difficulty flexing finger 4th finger lift hand - injured same last year while at Barehill CF . . ."  (AHR at June 29, 2004).  In the plan section of that entry, the writer noted "xray left hand then ortho referral."  *Id*.

In July 2004, Dr. Scheiner at Staten Island University Hospital reviewed x-rays of plaintiff's left hand.  (Dkt. No. 61, Seaman Aff., Exhibit 6 at 11).  On July 7,

2004, Dr. Scheiner found "no acute fracture, dislocation or significant joint space abnormality." *Id*. Dr. Scheiner's dictation was not reviewed until July 14, 2004. *Id*. For July 12, 2004, the AHR shows that plaintiff was "requesting to know result of xray of L ring finger done 7/2/04. Report not available." (AHR at July 12, 2004). On July 26, 2004, plaintiff again wanted to know the results of his previous tests, and "c/o L Ring finger pain." (AHR at July 26, 2004). The AHR shows that a doctor reviewed the x-ray report with plaintiff on July 28, 2004: "x ray report reviewed [with] pt - normal. Pt still [complains of] difficulty flexing DP left 4th finger - [complains of] swelling one joint." (AHR at July 28, 2004). The doctor also noted "ORT consult? - hip consent to be referred." *Id*. The AHR shows that on August 3, 2004, plaintiff "continues to c/o pain to L ring finger." (AHR at Aug. 3, 2004). The nurse noted "i/m just wanted continued pain documented." *Id*.

Defendants submit a form titled "NYSDOCS Request & Report of Consultation" dated July 28, 2004. (Dkt. No. 61, Seaman Aff., Exhibit 6 at 14). In the "Reason for consultation" section of the form, the writer noted "Pt c/o swelling & difficulty flexing ring finger of rt hand > 1yr - s/p injury at prior facility - xray done 7/2/04 - no -ac - fx, dislocation or significant joint space abnormality . . ." *Id*. In the "Consultant Report" section of the form, the writer's handwriting is unclear, but among the readable words are "no surgery necessary" and "no Rx needed."

Plaintiff states that he was examined by an orthopedic specialist in January

2005, and "it was determined that it was too late for any further medical treatment to done on the Plaintiffs' [sic] finger."  (AC ¶ 47).  Defendants submit another "NYSDOCS Request & Report of Consultation" dated December 29, 2004.  (Dkt. No. 61, Seaman Aff., Exhibit 6 at 15).  The consultant's signature is dated January 26, 2005.  *Id*.  This document includes information about plaintiff's back, but does not refer at all to plaintiff's left ring finger.  It is unclear whether this orthopedic specialist is the orthopedic specialist to which plaintiff refers in his Amended Complaint.

In opposition to the motion for summary judgment, plaintiff submits x-rays that he states were taken in January 2008, and a "Radiology Report" dated March 28, 2007.  (Dkt. No. 63, "Motion Exhibit #1" at 1-2, 3).  The findings on the Radiology Report were "[p]robable healed 'ball catcher's' or 'mallet' fracture at 4th DIP, healed."  (Dkt. No. 63, "Motion Exhibit #1" at 3).

Plaintiff filled out an Inmate Grievance Complaint on August 6, 2003, and the facility stamped the grievance received on August 8, 2003.  (Dkt. No. 61, Seaman Aff., Exhibit 5 at 1).  In the "Action requested by inmate," plaintiff wrote "I want to be seen by a doctor's an [sic] X-ray to be taken on my finger.  I want treatment on my finger before the condition worsens.  I would like to know what happened to my incident report I signed on June 13, 2003 at approx. 12 pm. . . In addition, that door in N-1 has broke [sic] times, which has caused many accidents and injuries to others.

11

That door needs to be properly fixed." *Id*. at 10, 12.

An investigation was conducted by an individual "G. Stanley." G. Stanley's

August 22, 2003 Investigative Report stated

> [u]pon investigation I was informed by T. Downer, Acting Nurse
> Administrator, that [plaintiff] is scheduled to be seen by Dr. Whalen, at
> which time he can address getting treatment for his finger. T. Downer
> indicated that the accident report is in [plaintiff's] medical file. All staff
> are required to wear their name tags when on duty.

*Id*. at 3.

The Inmate Grievance Review Committee ("IGRC") partially accepted

plaintiff's grievance and

> refer[red] to work control to assure that the door on housing unit N-1 is
> fixed and in proper working order. Also, recommend appropriate
> medical treatment be provided as soon as possible. *Please note* that
> the incident report that was provided by the medical department is not
> proper report for this incident.

*Id*. at 2. In her Declaration, NA Downer explained that she was "probably" incorrect

when she submitted a June 13, 2003 incident report that was not related to plaintiff's

grievance: "I saw that it was dated June 13th and did not know that he claimed to

have been involved in an earlier incident on that date. I have since attempted to find

a second incident report for June 13, 2003 and have been unable to do so." (Dkt. No.

61, Downer Decl. at ¶ 25). On August 27, 2003, plaintiff checked two of four boxes

appearing at the bottom of the IGRC decision: "I agree with the I.G.R.C. response,"

and "I wish to appeal to the Superintendent."

12

On September 16, 2003, the Superintendent wrote that plaintiff's grievance "has been investigated to the extent that the grievant has been seen by the facility physician, and an x-ray has been taken.  Medical staff are presently awaiting the result of the x-ray report from the radiologist."  (Dkt. No. 61, Seaman Aff., Exhibit 5 at 8).  Plaintiff states in his Amended Complaint that he appealed the Superintendent's decision to the Central Office Review Committee ("CORC") on September 18, 2003.  (AC ¶ 41).  The court has not received any papers related to any appeal by plaintiff to the CORC.  Defendants do not argue that plaintiff has failed to exhaust his administrative remedies.

3.  **Medical Care**

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate indifference standard.  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).  The first element is ***objective*** and measures the severity of the deprivation, while the second element is ***subjective*** and ensures that the defendant acted with a sufficiently culpable state of mind.  *Id*. at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

In order to meet the first element of the standard, plaintiff must show that he

13

has a sufficiently serious illness or injury. *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition has been considered "sufficiently serious" when there is a "condition of urgency," one that may result in death, degeneration, or extreme pain. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The seriousness of a plaintiff's medical need may also be determined by reference to the effect of denying the particular treatment. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 310 (S.D.N.Y. 2001)(citation omitted). Thus, if unnecessary and wanton infliction of pain results from the denial of treatment, or if the denial of treatment causes the inmate to suffer a lifelong handicap or permanent loss, the condition may be considered "sufficiently serious." *Id.* (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

In order to meet the second element of the standard, plaintiff must demonstrate more than an "inadvertent" or negligent failure to provide adequate medical care. *Id.* (citing *Estelle*, 429 U.S. at 105-106). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511

14

U.S. 825, 837 (1994)).

Disagreement with prescribed treatment does *not* rise to the level of a constitutional claim. *Sonds*, 151 F. Supp. 2d at 311. Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id*. (citations omitted). An inmate does *not* have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1086). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id*.

Thus, disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does *not* become a constitutional violation simply because the plaintiff is an inmate. *Id*. *See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under Section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

In the "Cause of Action" section of his Amended Complaint, plaintiff includes seven short paragraphs. (AC ¶¶ 49-55). The paragraphs state one constitutional claim against the defendants: that "[d]efendants' deliberate indifference in failing to

treat plaintiff's injury constituted cruel and unusual punishment."  (AC ¶ 50).

Plaintiff testified in his deposition that prior to his incarceration, plaintiff was

involved in various aspects of the music industry.  (Depo. 13, 19-27).  Plaintiff's

Amended Complaint states that plaintiff is now concerned about his ability to make a

living outside of prison because of what he terms a "permanent injury."  (AC ¶ 52).

Plaintiff claims that the care he received from Dr. Whalen was needlessly delayed

and inadequate once performed.  (AC ¶¶ 42-46).  Plaintiff claims that NA Downer

refused to assist plaintiff in obtaining treatment despite her personal knowledge of

his injury, and the likelihood that the condition would worsen.  (AC ¶¶ 31-37).

　　　Here, plaintiff must show that he has a serious injury to meet the objective

element of the deliberate indifference standard.  Plaintiff's injury is a fracture to the

tip of his ring finger.  In *Estelle v. Gamble*, the Supreme Court cited examples of

medical conditions that are sufficiently serious to meet the objective element of the

standard.  *Estelle v. Gamble*[4], 429 U.S. 94, 104 n. 10 (1976).  District courts in the

Second Circuit have generally held that a broken finger does not constitute a serious

---

[4]*Estelle* cited several instances serious medical needs:  *Williams v. Vincent*, 508 F. 2d 541 (2d Cir. 1974) (doctor's choosing the "easier and less efficacious treatment" of throwing away the prisoner's ear and stitching the stump may be attributable to "deliberate indifference. . . rather than an exercise of professional judgment"); *Thomas v. Pate*, 493 F. 2d 151, 158 (7th Cir. 1974) cert. denied *sub nom. Thomas v. Cannon*, 419 U.S. 879 (1974) (injection of penicillin with knowledge that prisoner was allergic, and refusal of doctor to treat allergic reaction); *Jones v. Lockhart*, 484 F.2d 1192 (8th Cir. 1973) (refusal of paramedic to provide treatment); *Martinez v. Mancusi*, 443 F.2d 921 (2d Cir. 1970), cert. denied, 401 U.S. 983 (1971) (prison physician refuses to administer the prescribed pain killer and renders leg surgery unsuccessful by requiring prisoner to stand despite contrary instructions of surgeon).

injury. *Magee v. Childs*, 9:04-CV-1089 (GLS/RFT), 2006 U.S. Dist. LEXIS 14571, *12-13 (N.D.N.Y. Feb. 27, 2006) (plaintiff's right hand was caught between a wall and the recreation pen door, breaking his right index finger, x-ray two days later showed the finger was broken); *Revenell v. Van Der Steeg*, 05 Civ. 4042 (WHP), 2007 U.S. Dist. LEXIS 17868, *10-11 (S.D.N.Y. March 14, 2007) (plaintiff dropped 60-pound dumb bell on his hand, doctor attempted to manipulate bone in hand to realign fracture, realignment was unsuccessful, non-surgical treatment continued). *See also*, *Sonds*, 151 F. Supp. 2d at 311; *Rivera v. Johnson*, 95-CV-0845E(H), 1996 U.S. Dist. LEXIS 14192, *6-*7 (W.D.N.Y. Sept. 20, 1996); *Henderson v. Doe*, 98 Civ. 5011 (WHP), 1999 U.S. Dist. LEXIS 8672, *7 (S.D.N.Y. June 10, 1999) (broken finger is not a "sufficiently serious" medical need and that a delay in treatment of a few days did not constitute deliberate indifference).

In this case, plaintiff's injury to the tip of his left ring finger was not a serious injury.  Plaintiff did not complain about pain in his finger or ask for treatment for almost two weeks after the incident on June 13, 2003.  Though the finger was still swollen two weeks after the injury occurred, it was clear to the nurse that the injury was to the ***tip*** of the finger ("ecclymatic at end of finger above nail bed").  (AHR at June 26, 2003(2)).  The AHR shows that the nurse applied a splint to the finger.  *Id*. Dr. Weismann reviewed plaintiff's chart on June 27, 2003 (AHR at June 26, 2003(1)), but it is unclear whether his review included the second entry on June 26,

17

2003.  Dr. Weismann's second review of plaintiff's chart on July 8 or 9, 2003 (AHR

at June 27, 2003) also does not indicate whether the review included the entry at July

5, 2003 when plaintiff complained about his finger again.  The AHR shows that Dr.

Whalen found some swelling when he examined plaintiff on September 4, 2003.

(AHR at Sept. 4, 2003).  The AHR shows that when Dr. Whalen examined plaintiff

on September 30, 2003, he found that plaintiff was able to flex and extend his finger

without difficulty, although plaintiff had some tenderness.  (AHR at Sept. 30, 2003).

Neither the symptoms of, nor the prescribed treatments for this injury indicate a

serious medical need.  The plaintiff is unable to meet the first, objective, element of

the deliberate indifference standard.

    With respect to the second, subjective, element of the deliberate indifference

standard, the court notes that plaintiff was regularly seen by the medical staff during

his brief time at Bare Hill Correctional Facility.  It has not been shown that either

Nurse Administrator Downer or Dr. Whalen was aware of and disregarded some

serious risk to plaintiff.  The court also notes that much of plaintiff's claim against

the defendants is based on plaintiff's disagreement with the how the timing of his

care was determined, and whether or not he required a specialist.  As noted above,

even if any of these medical judgments amounted to negligence or malpractice, they

do not amount to a constitutional violation. *Sonds*, 151 F. Supp. 2d at 312 (citing

*Estelle*, 429 U.S. at 107).  *See also Daniels*, 474 U.S. at 332 (negligence not

actionable under Section 1983).  Since there is no showing of an intentional or deliberate indifference to a serious medical need, defendants' motion for summary judgment with respect to plaintiff's claim of deliberate indifference to a serious medical need should be **GRANTED**.

　　　**WHEREFORE** it is hereby

　　　**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 61) be **GRANTED** and the case **DISMISSED** in its entirety.

　　　Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Date: September 18, 2008

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Hon. Gustave J. DiBianco
　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge